In the Matter of the CITY OF NEW YORK, Acting for and on Behalf of the New York City Housing Authority, Relative to Acquiring a Limited Interest in Real Property within the Area Bounded by JUNCTION BOULEVARD and Other Streets, in the Borough of Queens, Selected as a Site for REGO PARK HOUSES.

Supreme Court, Special Term, Queens County, December 21, 1950.

*Arthur A. Segall, Herman Meltzer* and *Robert L. Pelz* for Queens Horace Harding Corporation and others, claimants.

*Joseph B. Cavallaro* for Jacob Morgenthaler and another, claimants.

*George Bergen* for Louis Goldfarb and others, claimants.

*John P. McGrath, Corporation Counsel (Harold Tessler* and *William J. Reswick* of counsel), for City of New York.

UGHETTA, J. This is a motion to vacate, or in the alternative, modify, an order of this court dated June 2, 1949. That order granted the city's application to condemn certain lands in Queens County for a term of three years commencing June 14, 1949, as to a portion of the lands, and July 9, 1949, as to the remainder.

The lands involved are the site of the Rego Park Houses, an emergency housing project constructed in 1946 to help meet the post-World War II housing crisis. From 1946 to 1949, the city was in possession of the lands involved as a result of having condemned three-year terms in June and July, 1946.

The authority for this project and others like it is found in article X-B of the Public Housing Law. That article, enacted

in February, 1946 (L. 1946, ch. 51) recognized that the acute housing shortage which accompanied the demobilization of 1945 and 1946 demanded emergency measures. It further found that the shortage of housing had become so acute that it could not be alleviated by the normal processes of permanent housing. As a result, emergency housing projects were authorized.

Originally, there was no specific date on which emergency housing projects had to be terminated. Section 219-f of the Public Housing Law as enacted in 1946 required that they " be removed and disposed of as soon as practicable " after the emergency declared in article X-B had ended.

On April 20, 1949, section 219-f was amended. (L. 1949, ch. 724.) It now provides that emergency housing projects are to be " removed and disposed of as soon as practicable " after the emergency is over " but in no event beyond July first, nineteen hundred fifty-one."

This proceeding was authorized by the board of estimate on February 24, 1949 — before section 219-f was amended. The order granting the city's application is dated June 2, 1949 — after the section was amended.

The motion is by the claimants who own the fee of some of the lands condemned. They urge that the city may not condemn property for use as an emergency housing project after July 1, 1951, in view of the current language of section 219-f requiring that such projects be removed and disposed of by that date.

Section 1 of article XVIII, of the Constitution of the State of New York authorizes the State Legislature to provide low-rent housing for persons of low income " upon such terms and conditions as it may prescribe ". Subdivision 1 of section 219-b of the Public Housing Law states that emergency housing projects " shall be deemed to constitute low rent housing within the meaning of article eighteen of the constitution." The State Legislature, in empowering the city to erect emergency housing projects, acted within its constitutional prerogative when it prescribed as a term or condition that emergency housing projects must be removed and disposed of by July 1, 1951.

Even were there no provision in the State Constitution giving the Legislature the right to set terms and conditions upon privileges accorded under article XVIII, that right is inherent in the grant to the city of the State's power of eminent domain. The Court of Appeals has held that " The right of eminent domain is an attribute of sovereignty which the state may

grant or withhold at its will. When it delegates that right, it may impose upon the donee any condition that does not encroach upon or abridge any of the constitutional rights of those whose property is to be taken. It may require the donee of the right to do more than is demanded by the Constitution, but it may not permit less to be done. If the donee accepts the right and exercises it, the conditions subject to which it is granted cannot be evaded or ignored. They are part and parcel of the grant." (*People ex rel. Burhans* v. *City of New York,* 198 N. Y. 439, 446.)

In the instant proceeding the city availed itself of the provisions of article X-B of the Public Housing Law. One of the sections of that article imposed a condition upon the city. The city is bound by it.

Whether the city would have had the power to construct emergency housing projects had article X-B never been enacted became an academic question when the city acted under the provisions of article X-B. The resolution of the board of estimate, dated February 24, 1949, which authorized this proceeding concluded by stating, " Note — Provision of funds for the above acquisition was not included in the 1949 Capital Budget. This acquisition may be authorized, irrespective of provisions therefor in the Capital Budget, pursuant to Article X-B of the Public Housing Law."

The city's contention that the moving parties are estopped from raising any objection to the provisions of the order of June 2, 1949, is rejected. To hold otherwise would be to place in the hands of the city and an acquiescent property owner the power to evade an unequivocal mandate of the Legislature.

There is no dispute that the city may maintain emergency housing projects until July 1, 1951. In view of this fact there is no point in vacating the order of June 2, 1949. Instead it will be modified to provide that the city's interest in the lands involved will terminate on July 1, 1951.

A copy of this decision is being sent to the Governor of the State of New York in order to bring to his attention the consequences of the present wording of section 219-f of the Public Housing Law. Unless this section is amended during the next session of the Legislature, the City of New York will be forced to dispossess thousands of families now living in emergency housing projects. The housing shortage in New York City is far from over for persons of moderate means and every accommodation afforded by emergency housing projects is needed. Submit order.